# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GUST DIAMOND (a/k/a "Gus" Diamond), ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 10 C 471 |
| ) | |
| BP PRODUCTS NORTH AMERICA, INC., ) | Judge Ronald A. Guzmán |
| a Maryland corporation, B&R OIL CO., INC. ) | |
| d/b/a ATLAS OIL CO., ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Gust Diamond has sued BP Products North America, Inc. ("BP") for violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*, (Count I) and B&R Oil Co., Inc. doing business as Atlas Oil Co. (collectively "B&R") and BP for civil conspiracy under Illinois law (Count II). B&R has moved to dismiss the Second Amended Complaint and BP has moved for summary judgment. For the reasons provided herein, the Court grants BP's motion for summary judgment and B&R's motion to dismiss.

## Facts

Unless otherwise indicated, the following facts are either undisputed or deemed admitted due to noncompliance with Local Rule 56.1,[1] which this Court strictly enforces.

---

[1] For some examples of plaintiff's noncompliance with Local Rule 56.1(b)(3)(B), see Plaintiff's Response to Defendant's Statement of Facts ¶¶ 21-25, 26(a), 26(c), 33, 37-38, 51-52 and 63 and Plaintiff's Statement of Additional Facts ¶¶ 13, 15. Due to plaintiff's noncompliance, the facts asserted in the corresponding paragraphs in defendant's statement of facts are deemed admitted. Further, the above-mentioned paragraphs in plaintiff's statement of additional facts are not considered because they are either unsupported by the record or plaintiff failed to provide specific references to the record rather than an entire exhibit.

Diamond, as franchisee, and BP, as franchisor, entered into a three-year dealer Lease and Supply Agreement ("DLSA") beginning on November 1, 2008 and ending on October 31, 2011 for the BP-branded service station at 4721 West 87th Street, Hometown, Illinois ("Station"). (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 1, 7.)  Under the terms of the DLSA, Diamond agreed to lease the Station property and purchase motor fuel for resale at the Station property. (*Id.* ¶ 8.)  Under the DLSA, BP had the right at any time to sell or assign all or any portion of its interest, rights or duties under the DLSA and its interest in the Station property to any other party. (*Id.* ¶ 9.)  There was no provision in the DLSA that granted Diamond either the right to be notified in the event that BP intended to assign its rights in the DLSA or sell the Station property or the right of first refusal to purchase the Station property if BP elected to sell the Station property to a third party. (*Id.* ¶¶ 10-14.)

In October 2008, BP, as part of its business plan to discontinue its direct ownership and supply of retail gasoline stations and transition to a jobber-supplied distribution model, entered into a Purchase and Sale Agreement with B&R for the sale of certain properties, including the Station property. (*Id.* ¶¶ 16, 19.)  BP and B&R also entered into an Assignment and Assumption Agreement, through which BP assigned to B&R certain of its assets and obligations, including the DLSA with Diamond. (*Id.* ¶¶ 19, 42.)  BP and B&R did not, at any point during the negotiation and sale of this package of assets, agree that Diamond's DLSA would be terminated or nonrenewed or that B&R would send a notice of nonrenewal to Diamond. (*Id*. ¶ 26(a), (c).)

On November 13, 2008, in preparation for the assignment of its supply obligations, BP sent an email to the affected dealers, including Diamond, notifying them that B&R would be taking over as their gasoline supplier in early 2009 and there would be a mandatory meeting on

November 20, 2008 concerning the assignment. (*Id.* ¶¶ 29, 30.) The parties dispute, and thus the Court views in Diamond's favor, whether (1) at the beginning of the meeting, BP's representative announced that there would be no discussion about individual sites or motor fuel pricing (*id.* ¶ 33) and (2) Diamond spoke to Leo Pratt, a BP representative, who stated that BP understood as of the November 20, 2008 meeting that Diamond was likely to lose his lease for the Station as a result of BP's sale of the Station property to B&R (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8).

On January 23, 2009, the sale of the Station property and the assignment of BP's obligations under Diamond's DLSA to B&R was finalized. (Def.'s LR 56.1 Stmt. ¶ 40.) A record from the Cook County Recorder of Deeds shows that, as of that date, BP transferred the property to PAV2, LLC, an affiliate of B&R, for the amount of $996,500.00. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 10.) In a letter dated January 23, 2009, B&R informed Diamond that: (1) B&R did not intend to renew Diamond's franchise relationship when Diamond's lease expires on October 31, 2011 because B&R had a third-party buyer, who offered to purchase the Station property for $1,660,000.00 and (2) Diamond had forty-five days from the date of receipt of the letter to exercise a right of first refusal to acquire the Station for that price. (*Id.* ¶ 9.) Diamond did not exercise his right of first refusal. (Def.'s LR 56.1(a)(3) Stmt. ¶ 68.) Had Diamond exercised that right, he would have received a new motor fuel supply agreement with B&R as provided for in the purchase and sale agreement between B&R and the third party and his franchise relationship would have been renewed. (*Id.* ¶ 59.)

Since January 23, 2009, Diamond has purchased BP-branded motor fuel exclusively from B&R for the Station property. (*Id.* ¶ 47.) Diamond has not made payments to BP for motor fuel,

has not leased the Station Property from BP and has not made rent payments to BP for the Station property. (*Id.* ¶ 48.) Rather, Diamond has made payments for motor fuel and rent to B&R. (*See id.*) To date, Diamond still retains the right to use BP's trademarks, purchase and sell BP-branded motor fuel and lease the Station property pursuant to the terms of his DLSA because the DLSA has not expired. (*Id.* 57.)

**Discussion**

A district court will grant a summary judgment motion "only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). The court "construe[s] all facts and draw all inferences in the light most favorable to the non-moving party." *Id.* "The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

"Enacted in 1978, the PMPA was a response to widespread concern over increasing numbers of allegedly unfair franchise terminations and nonrenewals in the petroleum industry." *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC*, ___ U.S. ____, 130 S.Ct. 1251, 1255 (2010). "The PMPA was enacted to address the narrow areas of franchise terminations and nonrenewals, not to govern every aspect of the petroleum franchise relationship." *Id.* at 1264.

In this case, it is undisputed that a nonrenewal occurred on January 23, 2009, when B&R informed Diamond that it did not intend to renew the franchise relationship when the DLSA expired on October 31, 2011. (*See* Def.'s LR 56.1(a)(3) Stmt. ¶ 59.) Under the PMPA, "a

4

franchisor . . . may 'fail to renew' a 'franchise relationship' at the conclusion of that term only if the franchisor provides written notice and takes the action in question for a reason specifically recognized in the statute." *Mac's Shell Serv.,* 130 S.Ct. at 1264 (quoting §§ 2802, 2804). A "'franchise' is defined as 'any contract' that authorizes a franchisee to use the franchisor's trademark, as well as any associated agreement providing for the supply of motor fuel or authorizing the franchisee to occupy a service station owned by the franchisor." *Id.* These three authorizations are considered by courts to be the "statutory elements of a petroleum franchise." *Id.* n.1 (quotation omitted). "The term 'franchisor' means a refiner or distributor (as the case may be) who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel." § 2801(3). "If a franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of this title, the franchisee may maintain a civil action against the franchisor." § 2805(a).

Defendant BP argues that Diamond has failed to raise a genuine issue as to whether BP is liable under the PMPA because BP is not the franchisor as that term is defined by the statute. For Diamond to obtain relief for BP's unlawful nonrenewal of a franchise relationship, the plaintiff must allege "that the franchisor did not reinstate, continue, or renew the franchise relationship once a franchise agreement expired." *Mac's Shell Serv*, 130 S.Ct. at 1262 (citing 15 U.S.C. § 2802) (internal quotation marks omitted).

It is undisputed that prior to the nonrenewal, BP assigned its obligations and duties of performance under Diamond's DLSA to B&R and sold the Station property to B&R as part of its Purchase and Sale Agreement with B&R. (Def.'s LR 56.1 Stmt. ¶¶ 18-20, 58.) The parties agree that on January 23, 2009, B&R sent a letter notifying Diamond that it had purchased the

5

Station property, assumed BP's obligations under the DLSA, did not intend to renew his franchise relationship when the DLSA expired in October 2011 and provided him with a right of first refusal of at least forty-five days duration to purchase the Station property. (*Id.* ¶¶ 58-60.) It is also undisputed that since January 23, 2009, Diamond has continued to use the BP trademark under the DLSA with B&R, purchased BP-branded motor fuel exclusively from B&R and leased the Station Property from, and made rent payments to, B&R. (*Id.* ¶¶ 47-48.) Given these facts, no reasonable jury could find that BP was the franchisor that failed to renew the franchise relationship on January 23, 2009.

Because Diamond has not created a triable issue as to whether BP was the franchisor that failed to renew the franchise relationship on January 23, 2009, the only theory that could possibly pass muster is that the failure to renew occurred at some point earlier than January 23, 2009, *i.e.*, a constructive nonrenewal theory against BP, see *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 859 (7th Cir. 2002), and *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 906-07 (7th Cir. 1997) (recognizing constructive nonrenewal cause of action under limited circumstances). However, plaintiff disavows this theory by arguing that the only nonrenewal occurred on January 23, 2009 and by conceding that he is not "trying to assert that the assignment itself was the event of non-renewal." (*See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 9; *see* Def.'s Ex. A-2, Assignment and Assumption Agreement of 10/24/08.) Further, even if Diamond had embraced this theory, the undisputed facts show that, during the period when BP was the franchisor in the franchise relationship, none of the three statutory components of the franchise agreement, *i.e.*, the contract to use the BP trademark, the contract for the supply of BP motor fuel and the lease of the Station property, were disturbed in the least bit. (Defs.' LR

6

56.1(a)(3) ¶ 39; Pl.'s LR 56.1(b)(3)(C) ¶ 6); *see Shukla v. BP Exploration & Oil, Inc.*, 115 F.3d 849, 852-53 (11th Cir. 1997).

In the end, Diamond attempts to hold BP liable under the PMPA because, he argues, BP's conduct had the foreseeable effect of causing franchisor B&R's ultimate non-renewal. (*See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 9; *see also* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8.) Even if the Court assumes that BP knew that B&R was unlikely to renew his DLSA, the PMPA is not a gap-filling device that can be used to blue-pencil his DLSA to include a right of first refusal to purchase the Station property in the event that BP elected to sell the Station property to a third party. Unfortunately for Diamond, the PMPA merely establishes minimum standards governing the franchisor's nonrenewal of the franchise, and given the undisputed facts presented and the theory pressed in this case, he has failed to create a triable issue as to whether the statute affords him any relief against BP under these circumstances.

Lastly, because the Court has granted summary judgment in BP's favor as to Diamond's PMPA claim and Diamond's state law conspiracy claim against BP and B&R is wholly dependent upon the viability of his PMPA claim, the Court holds that he has failed to raise a triable issue as to his conspiracy claim as well. Accordingly, the Court grants BP's motion for summary judgment and B&R's motion to dismiss.

## **Conclusion**

For the reasons provided herein, the Court grants BP Products North America Inc.'s motion for summary judgment [doc. no. 51] and B&R's motion to dismiss [doc. no. 41]. This case is hereby terminated.

**SO ORDERED.**                                   **ENTERED:  November 9, 2010**

**HON. RONALD A. GUZMAN**
**United States District Judge**